UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
———————————————————————————

MATTHEW J. ROACH,

                              Plaintiff,

                                                            5:15-cv-1381
v.                                                          (LEK/TWD)

VAROOSH ZARIAN, JOHN SZAKALSKI,
STEVE ABBOTT, MARK TECHMANSKI,
and ROBERT NEWMAN,

                              Defendants.
———————————————————————————

APPEARANCES:                              OF COUNSEL:

MATTHEW J. ROACH
Plaintiff, *pro se*
612 West Onondaga Street
Apartment 3
Syracuse, NY 13204

OFFICE OF THE CORORATION COUNSEL          ERICA T. CLARKE, ESQ.
FOR CITY OF SYRAUCSE                       TODD M. LONG, ESQ.
Counsel for Defendants
233 East Washington Street
Room 300 City Hall
Syracuse, NY 13202

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## **REPORT-RECOMMENDATION AND ORDER**

       This civil rights action, commenced pursuant to 42 U.S.C. § 1983, has been referred to

the undersigned for a report and recommendation by the Honorable Lawrence E. Kahn, Senior

United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c).  Currently

pending before the Court is Defendants' motion to dismiss for failure to prosecute and failure to

comply with court orders pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil

Procedure.  (Dkt. No. 101.)  Plaintiff has not responded in opposition to Defendants' motion to dismiss despite the Court *sua sponte* extending the time in which to do so.  (*See* Dkt. No. 112.) For the reasons that follow, the Court recommends that Defendants' motion be granted.

## I.    RELEVANT PROCEEDINGS TO DATE

Plaintiff filed his complaint on November 20, 2015, alleging violations of his constitutional rights when Defendants, all alleged to be members of the Syracuse City Police Department, responded to a reported disturbance at Plaintiff's apartment located in the City of Syracuse on February 2, 2013.  (Dkt. No. 1.)

At the time of the initiation of this action, Plaintiff was in the custody of the New York State Department of Corrections and Community Service ("DOCCS").  (Dkt. Nos. 1, 3.) Shorting thereafter, Plaintiff was released from DOCCS custody.  (*See* Dkt. No. 6 at n.2.)  On December 3, 2015, Plaintiff changed his address to Hutchings Psychiatric Facility, c/o Erin Richardson, Social Worker, 620 Madison Street, Bldg. #5, Syracuse, New York 13210.  (Dkt. No. 5.)

By Order entered December 8, 2015, Plaintiff's application to proceed *in forma pauperis* (Dkt. No. 2) was granted and service was directed on Defendants.  (Dkt. No. 6.)  General Order 25, which sets forth the Civil Case Management Plan used by the Northern District, was issued. (Dkt. No. 7.)  The initial conference was scheduled for March 7, 2016.  *Id*.  The Civil Case Management Plan and mandatory disclosures were to be exchanged on or before February 29, 2016.  *Id*.

Defendants filed their answer on February 4, 2016.  (Dkt. No. 12.)  By letter dated February 25, 2016, Defendants informed the Court that a February 24, 2016, telephone call to Ms. Richardson confirmed Plaintiff no longer resided at Hutchings Psychiatric Facility and that

Ms. Richardson was no longer accepting mail on Plaintiff's behalf. (Dkt. No. 16.) As such, Defendants were unable to contact Plaintiff to discuss the Civil Case Management Plan or obtain an address to forward Defendants Rule 26 mandatory disclosures. *Id*. Regardless, Defendants timely filed a proposed Civil Case Management Plan with the Court. (Dkt. No. 15.) Because Plaintiff failed to notify the Court and Defendants of his change of address, Defendants requested, *inter alia*, an order directing Plaintiff to do so. (Dkt. No. 16.) By Text Order entered February 25, 2016, Plaintiff was directed to file a change of address in accordance with Local Rule 10.1(c)(2) by March 18, 2016. (Dkt. No. 17.) Plaintiff was advised "[f]ailure to file the change of address will result in a recommendation that the case be dismissed for failure to prosecute, failure to follow Local Rules, and failure to follow a Court order." *Id*. Additionally, the Rule 16 telephone conference previously set for March 7, 2016, was adjourned. *Id.*

On March 10, 2016, Plaintiff changed his address to Onondaga County Sheriff's Office and Justice Center, 555 South State Street, Syracuse, New York 13202. (Dkt. No. 20.) By Text Notice entered March 30, 2016, the Rule 16 telephone conference was rescheduled to May 17, 2016. (Text Entry 03/30/2016.) Further, the Court instructed updates to Civil Case Management Plans were to be filed and mandatory disclosure to be exchanged by May 10, 2016. *Id*. A copy of this Text Notice, General Order 25, and the current Civil Case Management Plan (Dkt. No. 15) were served via regular mail. *Id*.

On April 12, 2016, Plaintiff changed his address to 122 Dickerson Street, Syracuse, New York 13202. (Dkt. No. 21.) The next day, the March 30, 2016, mailing, which included the March 30, 2016, Text Notice, General Order 25, and Civil Case Management Plan was returned to the Court as undeliverable. (Dkt. No. 22.) The Court resent the March 30, 2016, mailing to Plaintiff at 122 Dickerson Street, Syracuse, New York, 13202. (Dkt. No. 23.) Plaintiff was also

ordered to provide the Court with a telephone number where he could be reached at the time of the May 17, 2016, Rule 16 conference. *Id.*

On May 2, 2016, Plaintiff changed his address to 100 Church Parkway, North Syracuse, New York 13212, and provided a telephone number for the Rule 16 conference. (Dkt. No. 24.) On May 10, 2016, Defendants filed a Civil Case Management Plan. (Dkt. No. 25.)

On May 17, 2016, the Court conducted the Rule 16 telephone conference, during which the following deadlines were set: (1) Plaintiff to serve Rule 26 mandatory disclosures by June 13, 2016; and (2) Rule 33 and 34 requests to be served by June 30, 2016. (Text Entry 05/17/2016.)

On June 6, 2016, Plaintiff changed his address to Onondaga Correctional Facility, P.O. Box 143, Jamesville, New York 13078. (Dkt. No. 26.) On June 7, 2016, Plaintiff requested a extension of time to comply with the discovery deadlines. (Dkt. No. 27.) On June 27, 2016, Defendants advised they had not received Plaintiff's Rule 26 initial disclosures and requested the Court to extend Defendants' deadline to serve Rule 33 and 34 requests. (Dkt. No. 28.) On June 28, 2016, the Court ordered all discovery deadlines to be held in abeyance. (Dkt. No. 29.) Plaintiff was ordered to file a report by July 29, 2016, regarding his incarceration status. *Id.*

While the discovery deadline was in abeyance, Plaintiff notified the Court he would be temporality residing at the Clifton Springs Hospital and Clinic, 2 Coulter Road, Clifton Springs, New York 14432 and requested an extension of the discovery deadlines. (Dkt. Nos. 30, 32.) Plaintiff's letter motion was denied as moot since deadlines were being held in abeyance and Plaintiff was directed to notify the Court of his location by August 19, 2016. (Dkt. No. 33.)

On July 21, 2016, and August 1, 2016, mailings that were sent to Plaintiff at Onondaga County Correction Facility and Clifton Springs Hospital and Clinic, respectively, were returned to the Court as undeliverable. (Dkt. Nos. 34, 35.)

On August 2, 2016, Plaintiff notified the Court that he was being held at Onondaga County Correctional Facility and requested another discovery extension. (Dkt Nos. 36, 37.) On August 24, 2016, the Court removed the case from the *pro se* mediation program and reset the discovery deadlines as follows: (1) Rule 26 disclosures due September 30, 2016; (2) Rule 33 and 34 requests to be served by October 31, 2016; (3) all discovery due March 31, 2017; and (4) dispositive motions due May 5, 2017. (Dkt. No. 38.)

Thereafter, Plaintiff filed a motion for appointment of counsel on September 12, 2016, arguing the complexity of the case and parole obligations would prevent him from "effectively and adequately stay[ing] current with necessary litigation and deadlines." (Dkt. No. 39.) Plaintiff also requested an extension of the discovery deadlines. (Dkt. No. 40.)

By letter motion filed September 14, 2016, Defendants moved to dismiss Plaintiff's complaint with prejudice for failure to prosecute. (Dkt. No. 41.) Defendants pointed out that since the action was commenced on November 20, 2015, Plaintiff changed his address seven times (*see* Dkt. Nos. 1, 5, 20, 21, 24, 26, 30, 36), and requested multiple discovery deadline extensions (*see* Dkt. Nos. 17, 33, 38, 40).

On September 14, 2016, Plaintiff's motion to stay the discovery deadline was denied. (Dkt. No. 42.) However, an extension of the discovery deadlines was granted as follows: (1) Defendants to re-serve Rule 26 initial disclosures by September 30, 2016; (2) Plaintiff to serve Rule 26 disclosures by October 31, 2016; (3) Rule 33 and 34 requests served by December 2, 2016; (4) all discovery remained due by March 31, 2016; and (5) dispositive motions remained due by May 15, 2017. *Id*. Plaintiff's motion for appointment of counsel was denied without prejudice. *Id*.

By Order entered September 15, 2016, Defendants' motion to dismiss the complaint for failure to prosecute was denied without prejudice. (Dkt. No. 43.) Plaintiff was once again advised that failure to follow the directives set forth in the September 14, 2016, Order "may result in the recommendation that this matter be dismissed for failure to follow Court directive and failure to prosecute." *Id*.

On November 1, 2016, nearly one year after commencing suit, Plaintiff filed a certificate of service informing the Court he served Rule 26 mandatory disclosures on Defendants. (Dkt. No. 47.) On November 3, 2016, Plaintiff changed his address to Elmira Correctional Facility. (Dkt. No. 48.)

On November 30, 2016, Plaintiff requested a "brief extension" of the December 2, 2016, discovery deadline to serve Rule 33 and 34 requests. (Dkt. No. 49.) Plaintiff further advised that he was at being held at Downstate Correctional Facility and anticipated being transferred to Mid-State Correctional Facility. *Id*.

On December 1, 2016, Defendants advised that prior to learning Plaintiff was in transit to Mid-State Correctional Facility, they had served Rule 34 and 35 demands on Plaintiff at Elmira Correctional Facility. (Dkt. No. 50.) Accordingly, Defendants renewed their motion to dismiss for failure to prosecute because Plaintiff failed to provide timely notices of his address change and requested another extension of discovery deadlines despite the Court's previous warning in the September 14, 2016, Order. *Id*. Alternatively, Defendants requested an extension of up to one week to re-serve their Rule 33 and 34 demands on Plaintiff at Mid-State Correctional Facility. *Id*.

On December 2, 2016, Plaintiff changed his address to Mid-State Correctional Facility and requested another extension of time to serve his Rule 33 and 34 demands on Defendants. (Dkt. No. 51.)

On December 5, 2016, Defendants' second motion to dismiss for failure to prosecute was denied without prejudice.  (Dkt. No. 52.)  The parties were ordered to serve Rule 33 and 34 requests by December 30, 2016.  *Id.*

On December 9, 2016, Defendants requested an extension of sixty days to respond to Plaintiff's discovery demands, which consisted of five sets of interrogatories.   (Dkt. Nos. 55.) The Court granted the letter request and ordered all parties to serve their discovery responses by February 9, 2017, and ordered all discovery due May 30, 2017.  (Dkt. No. 56.)

On January 11, 2017, Plaintiff changed his address to Greater Binghamton Health Center, 425 Robinson Street, Binghamton, New York 13904.  (Dkt. No. 57.)  On January 26, 2017, Plaintiff requested an extension of a "few months" to respond to Defendants' interrogatories and demands and to allow a prospective attorney he contacted to evaluate the merits of his claims for possible representation.  (Dkt. No. 58.)  Defendants responded to the motion.  (Dkt. No. 59.)  On January 27, 2017, the Court reset the discovery deadlines as follows: (1) responses to Rule 33 and 34 requests to be served by April 10, 2017; (2) discovery due by July 28, 2017; and (3) dispositive motions to be filed by September 12, 2017.  (Dkt. No. 60.)

On March 24, 2017, Defendants, *inter alia*, advised the Court they had yet to receive Plaintiff's responses and were prevented from scheduling his deposition given his residential status at the Greater Binghamton Health Center.   (Dkt. No. 61.)  On March 27, 2017, the Court reset the discovery deadlines as follows: (1) all discovery due by October 31, 2017; (2) discovery motions to be filed by November 7, 2017; and (3) dispositive motions to be filed by January 5,

2018.  (Dkt. No. 62.)  The Court directed Defendants to file a status report by May 5, 2017.
(Dkt. No. 62.)

On April 3, 2017, Plaintiff changed his address to 505 Mitchell Avenue, 2nd Floor,
Syracuse, New York 13208.  (Dkt. No. 63.)  The next day, Plaintiff requested two additional
months to respond to Defendants' Rule 34 demands.  (Dkt. Nos. 63, 64.)  The Court granted
Plaintiff's letter motion and ordered Plaintiff to serve responses to Defendants' discovery
demands by May 31, 2017.  (Dkt. No. 66.)  By status report filed May 5, 2017, Defendants
advised Plaintiff had yet to provide disclosures and despite numerous attempts, Defendants were
unable to successfully schedule Plaintiff's deposition.  (Dkt. No. 67.)  The Court ordered
Defendants to file another status report by June 18, 2017.  (Dkt. No. 68.)  On May 17, 2017,
Plaintiff changed his is address to 116 Edgemere Road, Syracuse, New York 13208.  (Dkt. No.
69.)

On May 30, 2017, one day before Plaintiff's discovery deadline, Plaintiff requested an
additional three months to respond to Defendants' discovery demands.  (Dkt. No. 71.)
Defendants opposed Plaintiff's motion. (Dkt. No. 72.)

On June 5, 2017, the Court noted Plaintiff had been granted multiple extensions (*see* Dkt.
Nos. 29, 38, 42, 52, 60, 66) regarding discovery issues.  (Dkt. No. 73.)  Therefore, the motion
was granted only to the extent that Plaintiff was ordered to respond to Defendants' Rule 33 and
34 demands by July 7, 2017.  *Id*.  The Court advised no further extensions would be granted.  *Id*.

By status report filed July 15, 2017, Defendants advised they still had not received
Plaintiff's responses to their Rule 33 and 34 requests, nor received medical authorizations or
disability benefits authorizations (among other authorizations), nor a criminal record waiver
pertaining to sealed records that Plaintiff brought as an issue in his complaint—as noted in the

Court's March 27, 2017, Text Order (*see* Dkt. No. 62). (Dkt. No. 76.) Further on account of

Plaintiff's "complete lack of response to [their] demands," Defendants advised no deposition

dates had been scheduled. *Id.* In light of Plaintiff's "dilatory and evasive behavior," Defendants

renewed their motion to dismiss for failure to prosecute:

> Plaintiff has failed to respond to Defendants' matter of course
> FRCP Rule 33 and 34 demands since their service on December 2,
> 2016, even after multiple court ordered extensions to do so (*see*
> Dkt. No. 22). He has asked for multiple extensions (at all phases
> of this case), and during such time has alleged that it was in order
> to either identify an attorney or seek the assistance of a specific
> unidentified counselor. During the entirety of the time for those
> extensions Plaintiff has not responded to one of Defendants' FRCP
> Rule 33 and 34 demands. The only activity Plaintiff has taken to
> move the case forward since [] service [of his] own discovery
> demands (received by this office on December 9, 2016) has been to
> change his address and persistently ask for more time.

*Id*. Defendants further argued Plaintiff's unwillingness to respond until he obtained legal

counsel demonstrated complete disregard for the Court's most recent discovery extension. *Id.* at

3. By Text Notice entered July 18, 2017, Plaintiff was notified his response to Defendants'

motion to dismiss was due by August 1, 2017. (Text Entry 7/17/2017.)

On July 19, 2017, Plaintiff changed his address to 2002 West Genesee Street, Apt. A-4,

Syracuse, New York 13219. (Dkt. No. 77.) On July 26, 2017, Plaintiff requested yet another

extension of the discovery deadline, which Defendants opposed. (Dkt. Nos. 79, 81.) On July 26,

2017, the Court's July 18, 2017, Text Notice mailed to Plaintiff was returned as undeliverable.

(Dkt. No. 80.)

By Text Order entered July 31, 2017, the Court denied Defendants' third motion to

dismiss for failure to prosecute without prejudice. (Dkt. No. 82.) The Court noted, however,

Plaintiff had been granted repeated extensions of time to serve discovery responses and to

conduct discovery (*see* Dkt. Nos. 38, 42, 52, 60, 66, 73), and had been warned no further

extensions would be granted (*see* Dkt. No. 73).  (Dkt. No. 82.)  In deference to Plaintiff's *pro se*

status, Plaintiff was granted one FINAL discovery extension as follows:

> Plaintiff MUST serve responses to Defendants' discovery demands
> by 8/31/2017.  NO FURTHER EXTENSIONS WILL BE
> GRANTED FOR ANY REASON, including Plaintiff's *pro se*
> status or Plaintiff's search for an attorney.  Plaintiff's failure to
> serve responses to all of Defendants' discovery demands by
> 8/31/2017 will result in a recommendation that this case be
> dismissed for failure to prosecute and failure to follow multiple
> Court orders.

*Id*.

By status report filed September 5, 2017, Defendants notified the Court of Plaintiff's

continued lack of discovery responses and, therefore, renewed their request to dismiss the

complaint for failure to prosecute and failure to follow multiple court orders.  (Dkt. No. 85.)

Specifically, Defendants contended Plaintiff failed to provide adequate responses to their Rule

33 demands and had yet to respond to their Rule 34 demands, defying the Court's most recent

order.  *Id.*  Additionally, Plaintiff failed to notarize his signed authorizations, making them

ineffectual.  *Id.*  Defendants also provided the Court with examples of Plaintiff's evasive

behavior in his responses to Defendants' interrogatories, which included  "incomplete and

confusing" responses, and improperly raised objections, such as exceeding the twenty-five

interrogatories (even though Defendants collectively submitted ten), and that Defendants'

interrogatories were repetitive.  *Id*.

Plaintiff's response to Defendants' motion to dismiss was due September 22, 2017.  (Dkt.

No. 89.)  Five days later, Plaintiff opposed Defendant's motion to dismiss on September 27,

2017.  (Dkt. No. 90.)

Thereafter, Defendants requested an abeyance of discovery while the parties awaited a

decision from the Court regarding their September 5, 2017, motion to dismiss.  (Dkt. No. 91 at

1.)  The Court scheduled a telephone conference for November 16, 2017, and granted the abeyance of the discovery deadline.  (Dkt. No. 92.)

During the November 16, 2017, telephone conference, the Court issued several rulings on the ongoing, yet immobile discovery.  (Text Entry 11/16/2017.)  Defendants' motion to dismiss for failure to prosecute was again denied without prejudice.  *Id*.  The Court advised Plaintiff this was his final chance to abide by Court deadlines and to follow Court orders.  *Id*.  The discovery deadlines were reset as follows: (1) Plaintiff's expert disclosure due January 30, 2018; (2) Defendants' expert disclosure due March 16, 2018; (3) Plaintiff's rebuttal due March 30, 2018; (4) all discovery due April 30, 2018, (5) discovery motions due May 7, 2018; and (6) dispositive motions due June 29, 2018.  *Id*.  The Court advised no further extension would be granted for any reason.  *Id*.  The Court advised a written order would also be issued.  *Id*.  Of note, during the conference call, Plaintiff confirmed his address with the Court as 1902 West Genesee Street, Apartment 5, Syracuse, New York 13204.  (*See* Dkt. No. 101.)  The Court issued a written Order on November 22, 2017.  (Dkt. No. 96.)

Despite Plaintiff's confirmation of his address during the November 16, 2017, telephone conference, mailings of the November 16, 2017, Text Entry and November 22, 2017, Order were returned to the Court as undeliverable.  (Dkt. No. 97.)

By letter filed January 4, 2017, Defendants, *inter alia*, requested a court conference, which was granted January 5, 2018, and a telephone conference was set for January 17, 2018. (Dkt. Nos. 99, 100.)  A copy of the January 5, 2018, Text Order was mailed to Plaintiff's last known address.  (Dkt. No. 100.)

The telephone conference was held on January 17, 2018.  (Text Entry 1/17/2018.) Plaintiff was not present.  *Id*.  During the conference, Defendants informed the Court of their

inability to reach Plaintiff by mail, as several mailings have been returned as undeliverable, and advised they had yet to receive Plaintiff's supplemental responses and authorizations. *Id.* A copy of the January 17, 2018, Text Minute Entry was mailed to Plaintiff's last known address. *Id.*

On January 23, 2018, Defendants filed the pending motion to dismiss for failure to prosecute and failure to comply with a court order. (Dkt. No. 101.) By Text Notice entered January 24, 2018, Plaintiff was advised his response to Defendants' motion to dismiss was due February 16, 2018. (Text Entry 1/24/2018.) A copy of this Text Order was mailed to Plaintiff's last known address. *Id.*

Copies of the January 5, 2018, Text Order, January 17, 2018, Text Entry, and January 24, Text Order mailed to Plaintiff were all returned to the Court as undeliverable. (Dkt. Nos. 104, 105, 108.)

On February 6, 2018, Plaintiff changed his address to 612 West Onondaga Street, Apartment #3, Syracuse, New York 13204, and requested, among other things, that he be granted an extension of time to respond to Defendants' discovery demands. (Dkt. No. 111.) On February 6, 2018, the Court denied Plaintiff's letter motion in all respects. (Dkt. No. 112.) The Court stated:

> Plaintiff has repeatedly failed to follow court orders and deadlines, and plaintiff was told in a phone conference on 11/16/2017 of the Court's oral order that no further extensions would be granted for any reason. (Text Minute Entry 11/16/2018.) This oral order was followed up with a written order (Dkt. No. 96) which was subsequently returned as undeliverable (Dkt. No. 97) because plaintiff once again failed to notify the Court of a change of address. Plaintiff has had multiple opportunities and extensions granted to him to complete discovery responses and he continues to fail to abide by Court orders. Hence, there is currently pending another motion to dismiss (Dkt. No. 101), with Plaintiff's response to that motion due 2/16/2018. However, Court extends the deadline for plaintiff to respond to the motion to dismiss to 2/28/2018, and no further extensions will be granted for any reason.

> The Clerk is directed to send Plaintiff a copy of the docket, along with copies of all of the mailings to plaintiff that have been returned as undeliverable since 10/16/2017. The clerk should also send plaintiff a copy of defendants' pending motion to dismiss (Dkt. No. 101).

*Id.* Plaintiff has not responded to Defendants' pending motion to dismiss for failure to prosecute and time within which to do so has expired.

## II.    DISCUSSION

"United States Courts are vested with broad discretion to impose sanctions for non-compliance with court orders, and those sanctions can include the severe sanction of dismissing a case." *Tylicki v. Ryan*, 244 F.R.D. 146, 147 (N.D.N.Y. 2006) (Kahn, D.J.) (citing *Internet Law Library, Inc. v. Southridge Capital Mgmt., LLC*, No. 01 Civ. 6600(RLC), 2005 WL 3370542, at *1 (S.D.N.Y. Dec. 12, 2005)[1] ("Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders.")).

Furthermore, Rule 41(b) provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute the case, or to comply with the procedural rules or orders of the court. Fed. R. Civ. P. 41(b); *LeSane v. Hall's Sec. Analyst, Inc.*, 239 F.3d 206, 209 (2d Cir. 2001). This power to dismiss may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Freeman v. Lundrigan*, No. 95-CV-1190 (RSP/RWS), 1996 WL 481534, at *1 (N.D.N.Y. Aug. 22, 1996). It is also well-settled that the term "these rules" in Rule 41(b) refers not only to the Federal Rules of Civil Procedure, but also to the local rules of practice for a district court. *Tylicki*, 244 F.R.D. at 147.

---

[1] The Court will provide Plaintiff with copies of unpublished decisions cited in this Report-Recommendation and Order in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

In determining whether such dismissal is appropriate, the court should consider (1) the duration of the delay occasioned by the plaintiff's conduct, (2) whether the plaintiff has received notice that further delay would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) the plaintiff's right to due process, and (5) the efficacy of lesser sanctions. *Lucas v. Miller*, 84 F.3d 532, 535 (2d Cir. 1996); *Davis v. Citibank, N.A.*, 607 F. App'x 93, 94 (2d Cir. 2015). No one factor is dispositive. *See Martens*, 273 F.3d at 180. However, with regards to *pro se* litigants, Rule 41(b) dismissal "remains a harsh remedy to be utilized only in extreme circumstances," and *pro se* plaintiffs "should be granted special leniency regarding procedural matters." *LeSane*, 239 F.3d at 209 (citation omitted).

Considering the first factor, Plaintiff has failed to take meaningful action in this case. This action was commenced on November 20, 2015, yet discovery remains at a standstill. Although Defendants' Rule 33 and 34 requests were served on Plaintiff on December 1, 2016, it was not until September 2, 2017, Plaintiff served his (inadequate) responses and (ineffectual) authorizations to Defendants, further protracting discovery. (Dkt. No. 87.) In view of Plaintiff's *pro se* status, this Court has granted Plaintiff numerous discovery extensions. *See* Dkt. Nos. 60, 66, 73, 82, 95. In further support of Plaintiff's lack of interest in pursuing this case, Plaintiff failed to respond to the present motion to dismiss. Therefore, the Court finds the first factor weighs in favor of dismissal.

Regarding the second factor, "[t]he Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction." *Folk v. Rademacher*, No. 00-CV-199S, 2005 WL 2205816, at *4 (W.D.N.Y. Sept. 9, 2005) (citing *Martens*, 273 F.3d at 180-81). Here, Plaintiff has repeatedly been notified that failure to comply with court orders and his inaction would result in a recommendation for dismissal. (Dkt. Nos. 19, 43, 82, 96.) Despite

these warnings, Plaintiff repeatedly requested extensions and failed to meet the deadlines set by the Court.  (*See* Dkt. Nos. 27, 32, 37, 40, 49, 51, 58, 64, 69, 77, 83, 110.)  "The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met."  *Nolan v. Primagency, Inc.*, No. 07 Civ. 134, 2008 WL 1758644, at *3 (S.D.N.Y. Apr. 16, 2008) (citing *Shannon v. General Elec. Co.*, 186 F.3d 186, 194-95 (2d Cir. 1999)); *see also Europacific Asset Mgmt. Corp. v. Tradescape, Corp.*, 233 F.R.D. 344, 353 (S.D.N.Y. 2005) ("A court's prior warning of dismissal, and subsequent inaction by a plaintiff, weighs in favor of dismissal.").  Thus, the second factor weighs in favor of dismissal.

The third factor also weights in favor of dismissal as further delay is likely to prejudice Defendants.  The events giving rise to Plaintiff's claims allegedly occurred on February 2, 2013, more than five years ago.  (Dkt. No. 1.)  This action was commenced more than two years ago. *Id*.  Plaintiff has not been deposed, nor has any meaningful discovery been obtained from Plaintiff.  Further delay may well affect the parties' ability to locate witnesses, and to preserve evidence.  *See, e.g.*, *Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) (noting that passage of time would cause memories to fade); *Lyell Theatre Corp. v. Loews Corp.*, 682 F.2d 37, 43 (2d Cir. 1982) ("prejudice to defendants resulting from unreasonable delay may be presumed).

As to the fourth factor, the need to alleviate congestion on the Court's docket outweighs Plaintiff's right to receive a further chance to be heard in this case.  Indeed, it is the need to monitor and manage cases such as this that delay the resolution of other cases.

Lastly, the Court has carefully considered sanctions less drastic than dismissal and finds them to be inadequate under the circumstances.

Therefore, weighing the above factors with the special solicitude that must be granted to *pro se* litigants, the Court finds dismissal for failure to prosecute is warranted in this case.

In light of the foregoing, the Court recommends granting Defendants' motion to dismiss for failure to prosecute pursuant to Rule 41(b) of the Federal Rules if Civil Procedure. Because the Court finds dismissal warranted for failure to prosecute, the Court need not address dismissal under Rule 37(b) of the Federal Rules of Civil Procedure for failure to comply with court directives.

**WHEREFORE**, it is hereby

**RECOMMENDED** that Defendants' motion to dismiss (Dkt. No. 101) be granted and that this action be **DISMISSED WITH PREJUDICE** for failure to prosecute; and it is further

**ORDERED** that the Clerk serve a copy of this Report-Recommendation and Order on Plaintiff to his address on file, along with a copy of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[2] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL**

---

[2] If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. P. 6(a)(1)(C).

**PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. §

636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72.


Dated: March 20, 2018
       Syracuse, New York

                                 Therèse Wiley Dancks
                                 United States Magistrate Judge

Case 5:15-cv-01381-LEK-TWD   Document 115   Filed 03/20/18   Page 18 of 38

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

2005 WL 3370542
Only the Westlaw citation is currently available.
United States District Court,
S.D. New York.

INTERNET LAW LIBRARY, INC.
and Hunter M.A. Carr, Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, LLC, et al., Defendants.
COOTES DRIVE, LLC.,
Defendant, Counterclaim-Plaintiff,
v.
INTERNET LAW LIBRARY, INC.,
Plaintiff, Counterclaim-Defendant.
Jack TOMPKINS, Kerwin Drouet, et al., Plaintiffs,
v.
SOUTHRIDGE CAPITAL
MANAGEMENT, et al., Defendants.

No. 01 Civ. 6600(RLC).
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Koerner Silberberg & Weiner, LLP, New York, NY, for
Internet Law Library, Inc.

Maryann Peronti, of counsel.

Christian, Smith & Jewell, Houston, TX, for Internet Law
Library, Inc.

Gary M. Jewell, James W. Christian, of counsel.

Tate & Associates, Richmond, TX, for Internet Law
Library, Inc.

Richard L. Tate, James W. Christian, of counsel.

Dla Piper Rudnick Gray Cary U.S. LLP, New York, NY,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Mangement Ltd.

Perrie M. Weiner, Caryn G. Mazin, Palmina M. Fava, of
counsel.

Kramer Levin Naftalis & Frankel LLP, New York, NY,
for Citco Group Limited.

Michael J. Dell, of counsel.

Law Offices of Michael S. Rosenblum, Los Angeles, CA,
for Southridge Capital Management LLC, Cootes Drive
LLC, Stephen Hicks, Daniel Pickett, Christy Constabile,
David Sims, and Navigator Management Ltd.

Michael S. Rosenblum, Amy M. Caves, of counsel.

Hanley Conroy Bierstein & Sheridan LLP, New York,
NY, for Kirwin Drouet, Jack Thompkins and Hunter
M.A. Carr.

Thomas I. Sheridan, III, of counsel.

Morrison & Foerster LLP, New York, NY, for Mark
Valentine.

Carl H. Loewenson, Jr., James E. Johnson, Joel C. Haims,
of counsel.

Gibbons, Del Deo, Dolan, Griffinger & Vecchione, PC,
New York, NY, for Thomson Kernaghan & Co, Ltd., and
TK Holdings, Inc.

Debra A. Clifford, of counsel.

**Opinion**

OPINION

CARTER, J.

BACKGROUND

**\*1** This case is the result of several actions arising out
of a set of related financing transactions.[1] The court
consolidated these cases and named ITIS Holdings Inc.
("INL") (f/k/a ITIS Inc. and Internet Law Library),
Hunter Carr, Kerwin Drouet, and Jack Tompkins the
plaintiffs. *Internet Law Library, Inc. v. South Ridge Capital
Mgmt., LLC,* 208 F.R.D. 59 (S.D.N.Y.2002) (Carter,
J). Accordingly, Southridge Capital Management LLC,
Stephen Hicks, Daniel Pickett, Christy Constabile, David
Sims, Navigator Management Ltd., The Citco Group
Limited, Citco Trustees (Cayman) Limited and Cootes
Drive, LLC ("Cootes Drive") were named defendants and

Cootes Drive's claims against INL became counterclaims. *Id.*

[1]    On January 12, 2001, INL, its Chief Executive Officer, Hunter M .A. Carr, and several shareholders filed suit against Southridge and a number of its representatives in the Southern District of Texas claiming, among other things, fraud, misrepresentation of material facts, manipulation of INL's stock and breach of contract. *See Internet Law Library, Inc., et al. v. South Ridge Capital Mgmt., LLC et al,* 01 Civ. 660(RLC). Later, some additional shareholders of INL brought suit in the Southern District of Texas alleging much the same facts. *See Brewer, et al. v. South Ridge Capital Mgmt ., LLC, et al.,* 0202 Civ. 0138(RLC). Finally, Cootes Drive LLC, a Southridge affiliate, brought suit in this court against INL and several of its directors asserting claims for breach of contract and fraud. *See Cootes Drive, LLC v. Internet Law Library, Inc.,* 01 Civ. 0877(RLC).

Over the years the court has dealt with various issues, (*see e.g., Internet Law Library Inc. v. South Ridge Capital Mgmt., LLC,* 223 F.Supp.2d 474 (S.D.N.Y.2002) (Carter, J) (hereinafter *"Internet Law I"* )) with which familiarity is assumed. Most importantly, the court dismissed the plaintiffs' claims with prejudice in *Internet Law Library Inc. v. South Ridge Capital Mgmt ., LLC,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.) (hereinafter *Internet Law II* ).

In the instant matter, defendant Cootes Drive moves for partial summary judgment against INL on its third counterclaim for breach of contract for failure to redeem preferred stock pursuant to a stock purchase agreement. Defendant Cootes Drive also seeks partial summary judgment against INL on its fourth counterclaim for breach of contract for failure to honor a promissory note. The plaintiffs cross move to dismiss defendants' counterclaims pursuant to Rule 37(b)(2)(C), F.R. Civ. P., due to alleged abuses of discovery procedures, and move for the court to reconsider its judgment entered July 8, 2005 dismissing plaintiffs' claims with prejudice. Under separate covers, plaintiffs have twice moved to supplement the record of the aforementioned motions and defendants have moved to strike some of plaintiffs' supporting affidavits. We consolidate the former motions with the latter and resolve them all in this opinion. Because of the nature of the issues raised in plaintiffs' motions, we reach them first.

## DISCUSSION

### I PLAINTIFFS' MOTION FOR RECONSIDERATION

Plaintiffs' motion for reconsideration brought pursuant to U.S. Dist. Ct. S.D.N.Y. Local Civil Rule 6.3 is based on the court's possible oversight of two matters: (a) the *res judicata* effect of its June 8, 2003 decision, specifically whether plaintiffs' affirmative defenses are barred, and (b) because Rule 37(b)(2)(C), Fed. R. Civ. P ("Rule 37") allegedly does not authorize sanctions. The parties have also made a request for the to court clarify these two issues, especially as they pertain to the order entered on July 8, 2003.

Under Rule 37, if a party "fails to obey an order entered under Rule 26(f) ... the court in which the action is pending may ... (C) ... strike [ ] out pleadings or parts thereof ... or dismiss[ ] the action or proceeding or any part thereof, or render judgment by default against the disobedient party." Plaintiffs' attempt to read the rule as only being applicable to parties who fail to participate in discovery is inapposite to the plain meaning of the statute. Moreover, the court has the inherent authority to dismiss a case when a party disobeys any of its orders. *See Chambers v. Nasco, Inc.,* 501 U.S. 32, 45 (1991). Plaintiffs flagrantly disregarded the discovery instructions of this court. As a result the court, acting well within its explicit and implicit authority, dismissed the plaintiffs' complaint. The court did not, however, dismiss the defendants' counterclaims or the plaintiffs' affirmative defenses to those counterclaims.

**\*2**   Cootes Drive argues that because the claims in plaintiffs' dismissed complaint form the basis for their affirmative defenses, plaintiffs' affirmative defenses are now barred by claim preclusion. Under the doctrine of claim preclusion, once a judgment has been made on the merits, the parties are prohibited from bringing a second suit based upon the same claims. *Hough v. Merrill Lynch, Pierce, Fenner & Smith, Inc.* 757 F. Supp 283, 291 (S.D.N.Y.1991) (Conner, J.). Cootes Drive would be correct to assert that plaintiffs are precluded from bringing another complaint based upon the same claims found in their dismissed complaint.[2] However, that issue is not before the court. The court mindfully chose not to dismiss the plaintiffs' affirmative defenses. Thus, these

Case 5:15-cv-01381-LEK-TWD    Document 115    Filed 03/20/18    Page 20 of 38

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

affirmative defenses have not been adjudicated and there is no logic or fairness to treating them as if they have.

2    A dismissal under Rule 37 is an adjudication on the merits. *See* Rule 41(b), F.R. Civ P.; *Nasser v. Isthmian Lines,* 331 F .2d 124 (2d Cir.1964).

We confirm that the court was within its authority in dismissing plaintiffs' complaint and that plaintiffs' affirmative defenses still stand. The court did not overlook these subjects. Accordingly, the motion for reconsideration is denied.

## II PLAINTIFFS' MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS

While arguing that the court lacked the authority to dismiss their claims pursuant to Rule 37, the plaintiffs have the audacity to request that we now dismiss Cootes Drive's counterclaims pursuant to the same rule and for the same alleged conduct. Without delving into the sophistical reasoning that allows them to entertain these contradictory propositions, it bears repeating that plaintiffs flagrantly defied the court's order. The plaintiffs and not Cootes Drive disrespected the court. If Cootes Drive had done so, or if they ever do, the court would not hesitate to impose sanctions. The motion is denied.

## III PLAINTIFFS' MOTIONS TO SUPPLEMENT THE RECORD

On February 12, 2004 and on April 6, 2004, plaintiffs filed motions to supplement the record. The documents that are the subject of these motions were produced in connection with an action pending in Georgia. The documents themselves are the organizational documents and various agreements between companies affiliated with Cootes Drive. There are also letters and memoranda sent to and from these affiliated companies and the law firm of Dorsey & Whitney LLP, their transactional counsel. Plaintiffs assert that these documents demonstrate that the defendants operated their businesses in a tiered structure in order to limit liability. Even if true, this assertion does not make the documents relevant to Cootes Drive's claims of breach or plaintiffs' motions to dismiss and for reconsideration. Indeed, many of the documents predate the note and agreement by several years. Because plaintiffs have not sufficiently demonstrated the relevance of the documents to the motions that they seek to supplement,

plaintiffs' two motions to supplement the record are denied.

## IV MOTIONS TO STRIKE PLAINTIFFS' AFFIDAVITS

**\*3** Cootes Drive moves to strike portions of the affidavit of Hunter M. Carr, dated September 19, 2003 (the "Carr Affidavit") and the affidavit of Richard L. Tate, dated September 22, 2003 (the "First Tate Affidavit") based on evidentiary objections. The court finds that these affidavits comport with Rule 56(e). Cootes Drive's motions to strike the Carr Affidavit and the First Tate Affidavit are denied.

The Citco Group Limited and Citco Trustees (Cayman) Limited (the "Citco defendants") move to strike the Affidavit of Richard L. Tate, dated October 20, 2003 (the "Second Tate Affidavit"). The Second Tate Affidavit is submitted as a response to the Citco Defendants' motion for summary judgment. However, to the court's best knowledge or that of the Citco defendants, there never was such a motion. Submission of a reply to a nonexistent motion is clearly inappropriate; furthermore, even if the submission of the affidavit was appropriate, the contents are not. An attorney's affidavit is typically used to present documents to the court and should not be used as counsel's personal vehicle to lobby the court. *Universal Film Exchanges, Inc. v. Walter Reade, Inc.,* 37 F.R.D. 4, 5 (S.D.N.Y.1965) (Levet, J.). In the Second Tate Affidavit, Tate, attorney for the plaintiffs, engages in extensive argumentation and draws numerous conclusions of law. Tate further swears to several matters of which he could have no direct personal knowledge of as an attorney that came upon this matter after the fact. The Second Tate Affidavit is more akin to a memorandum of law than to an attorney's affidavit. The motion to strike the Second Tate Affidavit in its entirety is granted.

## V COOTES DRIVE'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT

In deciding a motion for summary judgment, the court's role is not to determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc .,* 477 U.S. 242, 249 (1986). A party is entitled to summary judgment when "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to judgment as a matter of law." Rule 56(c), F.R. Civ. P.

### 1. Counterclaim Three: The Convertible Preferred Stock Purchase Agreement

After several months of negotiations, on or about May 11, 2000, Cootes Drive [3] and INL entered into the Convertible Preferred Stock Agreement (the "agreement"). Under the agreement, INL agreed to sell Cootes Drive shares of INL's 5% Series A Convertible Preferred Stock, which could be redeemed for INL common stock at Cootes Drive's request. Cootes Drive's motion for summary judgment on their third counterclaim is based on the failure of INL to honor one of these redemption requests.

[3]    Plaintiffs allege that Cootes Drive was inserted into the agreement at the eleventh hour as a substitute for Southridge and is in fact little more than a "straw man" created to insulate Southridge from liability.

To prevail on a claim for breach of contract under New York law, a party must show: 1) the existence of an agreement between the parties; 2) adequate performance of the contract; 3) breach of the contract; and 4) damages resulting from the breach. [4] The parties admit that the agreement exists, Pls. Statement Pursuant to Local Rule 56.1 ("Pls.Statement") at ¶ 1, and that the defendants performed. *Id.* at ¶ 6. INL admits that they did not honor Cootes Drive's redemption request. *Id.* at ¶ 14-15. Finally, defendants are able to show damages based upon the position it would have been in had INL performed under the agreement. Defs. Reply Mem. at 3. Cootes Drive has therefore met the requirements of their claim for breach against INL.

[4]    *Internet Law I,* 223 F.Supp.2d at 490 *citing Harsco Corp.,* 91 F.3d at 348; *See also Bridgeway Corp. v. Citibank, N.A.,* 132 F.Supp.2d 297, 305 (S.D.N.Y.2001) (Chin, J.).

**\*4**  While INL does not contest that they failed to honor the redemption request, they defend their failure to redeem the stock on the grounds that defendants, among other things, [5] fraudulently induced them into entering the agreement and materially breached the agreement. As is the case here, "[o]ne who relies upon an affirmative defense to defeat an otherwise meritorious motion for summary judgment must adduce evidence which, viewed

in the light most favorable to and drawing all reasonable inferences in favor of the non-moving party, would permit judgment for the non-moving party on the basis of that defense." *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54, 65 (S.D.N.Y.1996) (Kaplan, J.). The non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." *SHL Imaging, Inc. v. Artisan House, Inc.* 117 F.Supp.2d 301, 304 (S.D.N.Y.2000) (Pauley, J.). Within this framework the court will examine INL's defenses to Cootes Drive's counterclaims.

[5]    Plaintiff INL also raises a defense of "manipulation". This is not a recognized defense to breach of contract.

Plaintiffs contend that they relied upon a number of false statements made by the defendants outside of the agreement. Before deciding the underlying question of the merits of the fraudulent inducement claims, the court must first determine whether plaintiffs will be allowed to offer evidence pertaining to their claim. Under New York law, if a contract contains a merger clause, parol evidence is not admissible to "vary, or permit escape from the terms of an integrated contract." [6] However, a general merger clause will not preclude a party from introducing parol evidence that they were induced into entering a contract by means of fraud, [7] and a party may escape liability by establishing proof of such fraud. [8] The exception to this rule is that if the contract contains a disclaimer of certain representations, the relying party cannot claim that they were defrauded as to those specific representations. [9]

[6]    *Manufacturers Hanover Trust Co. v. Yanakas,* 7 F.3d 310, 315 (2d Cir1993) *citing Fogelson v. Rackfay Construction Co.,* 300 N.Y. 334, 340, 90 N.E.2d 881, 884 (1950)

[7]    *Sabo v. Delman,* 3 N.Y.S 155, 161-62, 164 N.Y.S.2d 714, 717-19 (1957); *Bridger v. Goldsmith,* 143 N.Y. 424, 428, 38 N.E. 458, 459 (1894) ("fraud [in the inducement] vitiates every transaction")

[8]    *See Danann Realty Corp. v. Harris,* 5 N.Y.2d 317, 320, 157 N.E.2d 597, 598, 184 N.Y.S.2d 599, 601 (1959)(contract provided that "all understandings and agreements heretofore had between the parties hereto are merged in this contract ... neither party [is] relying upon any statement or representation not embodied in the is contract").

[9]    *Citibank v. Plapinger,* 66 N.Y.2d 90, 94, 495 N.Y.S.2d 309, 312 (1985) (provision in multimillion dollar

Case 5:15-cv-01381-LEK-TWD    Document 115    Filed 03/20/18    Page 22 of 38

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

agreement stating that all guarantees are "absolute and unconditional" precluded defense of fraud)

The agreement between the parties contains both a merger clause [10] and a disclaimer of reliance. [11] Plaintiffs defend against these facts by asserting that the disclaimer is general and not specific. [12] In New York, no particular words are needed to make a disclaimer specific. [13] However, a specific disclaimer must "contain explicit disclaimers of the particular representations that form the basis of the fraud in the inducement ... the touchstone is specificity." [14] The disclaimer in question appears at the end of warranties and representations section of the agreement and reiterates that no warranties or representations shall be made other than those in the immediately preceding section. [15] This is, by nature, a general disclaimer; it lacks the specificity to meet the standard the Second Circuit has applied under New York law. New York law requires more than a "generalized boilerplate exclusion [clause]," [16] a disclaimer must speak directly to the matter at issue in order to preclude a claim of fraud in the inducement. [17] The court therefore finds that plaintiffs are not barred from introducing evidence of fraud in the inducement.

[10]  "The Transaction Documents ... contain the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters ..." agreement § 4.2.

[11]  "The Company acknowledges and agrees that no Purchaser makes or has made any representations or warranties with respect to the transactions contemplated hereby other than those specifically set forth in this Section 2.2" agreement § 2.2.

[12]  "[A] general merger clause is ineffective to exclude parol evidence to show fraud in inducing the contract ..." *Danann Realty* at 320.

[13]  *Wells Fargo Bank Northwest, N.A. v. Taca Intern. Airlines, S .A,* 247 F.Supp.2d 352, 368 (S.D.N.Y.,2002) (Lynch, J.) *quoting Lucas v. Oxigene, Inc.,* No. 94 Civ. 1691, 1995 WL 520752 at *5 (S.D.N.Y.1995) (Mukasey, J.)

[14]  *Yanakas,* 7 F.3d 310, 316 *citing Grumman Allied Industries, Inc. v. Rohr Industries, Inc.,* 748 F.2d 729 (2d Cir.1984)

[15]  § 2.2 includes representations by the purchasers regarding their organization and authority to enter into the agreement, investment intent, "accredited investor" status, financial experience, ability to bear risk of the investment, access to information and other securities related matters.

[16]  *Yanakas,* 7 F.3d 310, 317.

[17]  *DiFilippo v. Hidden Ponds Associates,* 146 A.D.2d 737, 738; 537 N.Y.S.2d 222, 224 (N.Y.A.D. 2 Dept.1989) ("[b]ecause the [disclaimer] provision does not specifically disclaim reliance on any oral representation concerning the particular matter as to which plaintiff now claims he was defrauded, it does not foreclose him from offering evidence of the defendants' oral representations to the contrary.")

**\*5**  The court now examines the claims of fraud to determine if there is a genuine dispute as to a material fact. Under New York law, a claim of fraudulent inducement requires proof (1) that the defendants made a representation, (2) as to a material fact, (3) which was false, and (4) known to be false by the defendants, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity, (8) to his injury. [18] Plaintiffs list nine misrepresentations that it claims the defendants made to them. Pls. Statement at ¶ 59. Although their claim has been plead with specificity, [19] plaintiffs have failed to prove reliance on each of the statements for one or more of the following reasons. Where the defendants' alleged misrepresentations are contradicted or subsumed by material in the agreement, for example, that INL's stock would be acquired for investment purposes and not for distribution or resale, we find that the plaintiffs' claims are unreasonable as a matter of law. [20] The court finds plaintiffs' reliance on other statements to be simply unreasonable. "Reliance means reasonable reliance." *M.H. Segan Ltd. Partnership v. Hasbro, Inc.* 924 F.Supp. 512, 526 (S.D.N.Y.1996) (Cote, J.) (internal quotations and citations omitted). After analysis of the material provided by the parties, the court concludes that alleged representations such as "[t]hey would not manipulate stock in order to depress its price", Pls. Statement at ¶ 59, are so important to the functioning of a publicly traded company that no reasonable businessperson would have relied on them without putting them in writing after first discussing them at length. [21] Other misrepresentations, for example,

that other companies funded by defendants experienced increases in their stock prices, Pls. Statement at ¶ 59, would have been easily verifiable. [22] The remaining statements are uncontraverted or without consequence. Holding, as we do, that INL cannot satisfy the reliance element of their affirmative defense of fraudulent inducement we need not look into the remaining elements of the claim. INL's affirmative defense of fraudulent inducement as to Cootes Drive is hereby struck insofar as it pertains to the third counterclaim.

[18]   *Computerized Radiological Servs. v. Syntex Corp.,* 786 F.2d 72, 76 (2d Cir.1986) *quoting Brown v. Lockwood,* 76 A.D.2d 721, 432 N.Y.S.2d 186, 193 (1980).

[19]   In the court's previous decision, the fraud claims were examined under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5, passed pursuant to § 10(b). The court held that because the plaintiff satisfied the elements for pleading a claim under the statutes, they had satisfied the nearly identical common law fraud requirements as well. *Internet Law I,* 223 F.Supp.2d 489-90.

[20]   *See Brown v. E.F. Hutton Group, Inc.,* 991 F.2d 1020, 1031 (2d Cir.1993) (district court correct in granting summary judgment after holding reliance unreasonable as a matter of law where alleged misrepresentations were contradicted by offering materials); *Emergent Capital Inv. Management, LLC v. Stonepath Group, Inc.,* 343 F.3d 189, 196 (2d Cir.2003) (plaintiff's failure to insist that a representation be included in a stock purchase agreement "precludes as a matter of law a finding of reasonable reliance"); *Feinman v. Schulman Berlin & Davis,* 677 F.Supp. 168, 170-71 (S.D.N.Y.1988) (Kram, J.) (dismissal appropriate where plaintiffs relied on statements "directly contradicted by the clear language of the offering memorandum"); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.,* 924 F.Supp. 512, 527 (S.D.N.Y.1996) (Cote, J.) (party failed to establish reasonable reliance as a matter of law where misrepresentations were "directly contradicted" by written waiver agreement).

[21]   "Sophisticated business entities, when put on notice of the existence of material facts which have not been documented, assume the business risk that the facts may not be as represented because a party will not be heard to complain that he has been defrauded when it is his own evident lack of due care which is responsible for his predicament." 247 F.Supp.2d

352, 369 (internal quotations omitted) *quoting Lazard Freres & Co. v. Protective Life Ins.,* 108 F.3d 1531, 1543 (2d Cir.1997).

[22]   "Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance." *Grumman Allied Industries, Inc. v. Rohr Industries, Inc.* 748 F.2d 729, 737 (2d Cir.1984).

The court held previously that plaintiffs have successfully pleaded claims to meet the elements of an action for breach of contract. *Internet Law I,* 223 F. Supp at 490. The court now searches the record to see if there is sufficient evidence to prove these allegations. What is in dispute is whether Cootes Drive's breach, namely, selling shares short in violation of the agreement, was material. [23] If Cootes Drive's breach was material, plaintiffs argue, plaintiffs were excused from performance. As discussed above, Cootes Drive has proven its claim and the burden is upon plaintiffs to produce evidence that would "permit judgment for the [plaintiffs] on the basis of [their] defense." [24]

[23]   "Under New York law, for a breach of a contract to be material, it must go to the root of the agreement between the parties. A party's obligation to perform under a contract is only excused where the other party's breach of the contract is so substantial that it defeats the object of the parties in making the contract." *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997) (internal quotations and citations omitted); *Wechsler v. Hunt Health Systems, Ltd.,* 186 F.Supp.2d 402, 413 (S.D.N.Y.2002) ("Under New York law [materiality of a breach] is a question of law for the Court to decide.")

[24]   *Frankel v. ICD Holdings S.A.,* 930 F.Supp. 54 (S.D.N.Y.1996) (Kaplan, J.) (holding that custom crafted disclaimer language in notes negotiated between sophisticated parties waived a defense of fraud in the inducement)

*\*6* Plaintiffs make grand allegations but actually prove very little. Construing the facts in the light most favorable to them, but without taking any untoward leaps of faith, plaintiffs have shown that defendant Cootes Drive sold 64,346 shares "short" [25] prior to receiving a waiver [26] from INL that enabled them to sell shares in this manner.

Case 5:15-cv-01381-LEK-TWD   Document 115   Filed 03/20/18   Page 24 of 38

Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...

2005 WL 3370542

During the 93 trading days before the waiver, defendant Cootes Drive maintained short positions on only 7 days. Pls. Statement at ¶ 24. The shorted sales make up a very small minority of the shares traded by Cootes Drive and a minute percentage of the overall total shares traded during the period. The court finds that, in light of the peculiarities of this case, this small amount of trading is merely a technical violation of the agreement; it does not go to the root of the agreement between the parties and is therefore not is enough to constitute a material breach and excuse INL from performance. [27]

[25]     § 3.13 of the agreement defines short sales as a sale where there was not an equivalent offsetting long position including shares due under a notice of conversion.

[26]     Plaintiffs do not contest the authenticity of the waiver but allege the waiver was given as a result of the underlying fraudulent inducement. Holding, as we do, that plaintiffs' claims of fraudulent inducement are without merit, we find the parties validly entered into the waiver.

[27]     "The right of a party to enforce a contract will not be forfeited or lost by reason of technical, inadvertent, or unimportant omissions or defects." *Cablevision Systems Corp. v. Town of East Hampton,* 862 F.Supp. 875, 885 (E.D.N.Y.1994), *aff'd* 57 F.3d 1062 (2d Cir.1995) (unpublished table decision), *quoting Miller v. Benjamin,* 142 N.Y. 613, 617, 37 N.E. 631 (1894).

The one piece of evidence that plaintiffs produced which tends to mitigate in their favor are the trading records showing that Thomas Kernaghan, an agent and broker for Cootes Drive, was shorting INL stock. However, these trades begin well before the agreement and plaintiffs do not show that the trades were done at the behest of Cootes Drive. Plaintiffs have requested additional discovery to flesh out these particular weaknesses in their defense of breach. Plaintiffs have already been given ample time for discovery. In light of this and plaintiffs' conduct during such discovery, no additional discovery will be granted. [28]

[28]     *See Internet Law II,* 2003 WL 21537782 (S.D.N.Y.2003) (Carter, J.).

INL's defense of breach is hereby struck as it pertains to the third counterclaim. Plaintiffs have also included in their pleadings an everything-but-the-kitchen-sink list of affirmative defenses that they do not even attempt to

support. [29] Like their affirmative defenses of fraud and breach, we find these defenses to be without merit as they pertain to Cootes Drive's Third Counterclaim. We hereby award summary judgment in favor of Cootes Drive on their Third Counterclaim. INL is required to pay damages and interest to Cootes Drive for breach of the agreement.

[29]     Reply to Counterclaims at 17-19.

   2. Counterclaim Four: The Promissory Note
Cootes Drive's fourth counterclaim for breach of contract is for failure to repay a promissory note. In New York, proof of a promissory note, demand and nonpayment establishes a prima facie case for recovery. [30] A prima facie case entitles the promisee to judgment as a matter of law. [31] In the instant matter, plaintiffs concede that "Cootes Drive agreed to loan INL $500,000 ... [as] memorialized by a promissory note dated December 5, 2000" (the "note"). Pls. Statement at ¶ 29-30. Plaintiffs further concede that Cootes Drive provided the funds; demanded payment on March 1, 2001; and that "[INL] has not paid the Note" *Id.* at 32-33. Based upon plaintiffs' admissions alone, Cootes Drive has squarely met the burden of proving a prima facie case.

[30]     *See First Federal Sav. Bank v. Tazzia,* 696 F.Supp. 904, 906 (S.D.N.Y.1988); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.); *Citicorp Intern. Trading Co., Inc. v. Western Oil & Refining Co., Inc.,* 790 F.Supp 428 (S.D.N.Y.1992) (Sweet, J .).

[31]     *Gross v. Fruchter,* 230 A.D.2d 710, 711, 646 N.Y.S.2d 53, 54 (N.Y.A.D. 2 Dept.1996) (promisee established entitlement to judgment as a matter of law by producing note and demonstrating that maker failed to redeem when requested).

**\*7** Once the promisee has demonstrated a prima facie case for recovery on a note, in order to avoid judgment, it is up to the maker to produce evidence showing a triable issue fact establishing a bona fide defense. *Grasso v. John I. Shutts Agency, Inc.,* 517 N.Y.S.2d 113, 132 A.D.2d 768 (N.Y.App.Div.1987). To this end, mere conclusory allegations will not suffice; a genuine and substantial issue rebutting holder's entitlement to payment must be shown. *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Fremont,* 760 F.Supp. 334, 336 (S.D.N.Y.1991) (Stanton, J.). Without being explicit, plaintiffs seem to

Case 5:15-cv-01381-LEK-TWD   Document 115   Filed 03/20/18   Page 25 of 38
Internet Law Library, Inc. v. Southridge Capital..., Not Reported in...
2005 WL 3370542

posit the same defenses to the payment of the note as the agreement, specifically that the note is a result of underlying fraud and that the defendants breached the note in some manner. Although, plaintiffs' fraud defense is invalid for the reasons described above, it is worth noting that it would not be applicable to the note because the plaintiff specifically waived his right to protest payment of the note. Note § 6 ("[a]ll payments of principal and interest shall be made without setoff, deduction or counterclaim.") Under New York law, such a waiver among sophisticated parties is effective to overcome virtually any defense to enforcement. [32]

[32] *Citicorp Intern. Trading Co., Inc., 790 F.Supp at 434; Thornock v. Kinderhill Corp., 749 F.Supp. 513 (S.D.N.Y.1990)* (Sweet, J.) (granting summary judgment in favor of promisee despite maker's defense of fraudulent inducement because such defense was not based upon misrepresentations concerning terms or conditions of loan itself); *Bank of Suffolk County v. Kite,* 49 N.Y.2d 827, 427 N.Y.S.2d 782 (1980) (Bank entitled to judgment on note despite alleged oral understanding that maker would not be liable where the unexpressed condition was inconsistent with the expressed terms of the note).

Plaintiffs offer no theories as to how Cootes Drive has breached the conditions of the note. Plaintiffs merely allege that after entering the agreement, their position with creditors had become so poor that they had no one else to turn to for money. Even assuming this is an attempt to contrive a non-frivolous economic duress defense, the court finds no merit in it. Plaintiffs were not "forced to agree to [the note] by means of a wrongful threat precluding the exercise of his free will." [33] INL's defenses to enforcement of the note fail. Summary judgment is awarded to Cootes Drive on their fourth counterclaim. INL must repay the principal and accrued interest on the note.

[33] *Signet Corp. v. Interbank Financial Services, Inc., 755 F.Supp. 103, 105 (S.D.N.Y.1991)* (Eldelstein, J.) *quoting Austin Instrument, Inc. v. Loral Corp.,* 29 N.Y.2d 124, 130, 324 N.Y.S.2d 22, 25 (1971).

CONCLUSION

Plaintiffs' request for the court to reconsider the judgment entered July 8, 2005 is DENIED. Plaintiffs' motion to dismiss Cootes Drive's counterclaims is DENIED. Both of plaintiffs' motions to supplement the record are DENIED. Cootes Drive's motions to strike the Carr Affidavit and First Tate Affidavit are DENIED. The Citco defendants' motion to strike the Second Tate Affidavit is GRANTED. Partial summary judgment in favor of Cootes Drive on its third and fourth counterclaims is GRANTED.

IT IS SO ORDERED

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3370542

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:15-cv-01381-LEK-TWD    Document 115    Filed 03/20/18    Page 26 of 38

Freeman v. Lundrigan, Not Reported in F.Supp. (1996)

1996 WL 481534

1996 WL 481534
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Millicient FREEMAN, Plaintiff,

v.

Kevin LUNDRIGAN, C.O., Defendant.

No. 96–CV–1190 (RSP/RWS).

|

Aug. 22, 1996.

**Attorneys and Law Firms**

Millicient Freeman, Oriskany, NY, Pro se.

McLane and Smith, L.L.P., Utica, NY (Steven A. Smith, of counsel), for Defendant.

**Opinion**

ORDER

POOLER, District Judge.

**\*1** By Order dated February 5, 1996 ("Order"), I approved the Order and Report–Recommendation of Magistrate Judge Ralph W. Smith, Jr., dated October 5, 1995, and dismissed this action as against Daniel Middaugh, Michael Durant, Todd Egger, Robert Stanton and Daryl Bourant. *See* Dkt. No. 11.

A copy of the Order was served on Freeman at her last known address by regular mail on February 6, 1996. On February 12, 1996, the Order was returned to the Court marked "No Longer at This Facility—Please Return to Sender." *See* Dkt. No. 12.

On June 19, 1996, Steven A. Smith, Esq., attorney for the defendant, filed an affidavit with the Court stating that he had attempted to serve a first set of interrogatories on Freeman at the address listed on the summons, and that it was returned to him by the Post Office marked "RTS" or return to sender. *See* Dkt. No. 14.

Rule 41(b) of the Federal Rules of Civil Procedure provides that a court may, in its discretion, dismiss an action based upon the failure of a plaintiff to prosecute an action or comply with any order of the court. *Link*

*v. Wabash Railroad County Independent School District,* 370 U.S. 626 (1962). This power to dismiss an action may be exercised when necessary to achieve orderly and expeditious disposition of cases. *See Rodriguez v. Walsh,* No. 92–Civ–3398, 1994 WL 9688, \*1 (S.D.N.Y. Jan. 14, 1994) (citations omitted).

Additionally, this Court specifically cautioned Freeman that her failure "to promptly notify the Clerk's Office of any change in her address ... [would] result in the dismissal of the instant action." *See* Dkt. No. 3 at 7.

Moreover, a plaintiff has the duty to inform the Court of any address changes. As I have stated:

> It is neither feasible nor legally required that the clerks of the district courts undertake independently to maintain current addresses on all parties to pending actions. It is incumbent upon litigants to inform the clerk of address changes, for it is manifest that communications between the clerk and the parties or their counsel will be conducted principally by mail. In addition to keeping the clerk informed of any change of address, parties are obliged to make timely status inquiries. Address changes normally would be reflected by those inquiries if made in writing.

*Dansby v. Albany Cty Corr. Facility,* No. 95–CV–1525, 1996 WL 172699, \*1 (N.D.N.Y. Apr. 10, 1996) (Pooler, J.) (quoting *Perkins v. King,* No. 84–3310, slip op. at 4 (5th Cir. May 19, 1985) (other citations omitted)); *see generally* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York.

This matter cannot proceed without notification to the Court by Freeman of her current address. Therefore, it is hereby:

ORDERED, that this action is dismissed, *See* Rule 41.2(b) of the Local Rules of Practice for the Northern District of New York, and it is further;

1996 WL 481534

ORDERED, that the Clerk serve a copy of this Order on Freeman by regular mail at her last known address and on Steven A. Smith, Esq., attorney for the defendant.

**\*2**  IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1996 WL 481534

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

2005 WL 2205816
Only the Westlaw citation is currently available.
United States District Court,
W.D. New York.

Wattie FOLK, Plaintiff,

v.

P. RADEMACHER, et al., Defendants.

No. 00-CV-199S.
|
Sept. 9, 2005.

**Attorneys and Law Firms**

Wattie Folk, Great Meadow Corr. Facility, Comstock, NY, pro se.

William Lonergan, New York State Attorney General's Office, Stephen F. Gawlik, Assistant Attorney General, Buffalo, NY, for Defendants.

**Opinion**

DECISION AND ORDER

SKRETNY, J.

I. INTRODUCTION

**\*1** Plaintiff commenced this action under 42 U.S.C. § 1983 on March 3, 2000, by filing a Complaint in the United States District Court for the Western District of New York. Presently before this Court is a Motion to Dismiss filed by the remaining defendants in this case-P. Rademacher, Sgt. Stachewiez, Lt. Hendel, W.Kelley, Hartman, Fleming, Booker, Piasa and Sgt. Baker ("Defendants")-on September 2, 2004. Defendants bring their motion pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. This is the third motion filed by Defendants on these grounds. For the reasons stated below, Defendants' motion is granted and this case is dismissed with prejudice.

II. BACKGROUND

This motion arises from a discovery ruling issued by the Honorable Hugh B. Scott, United States Magistrate Judge. On October 15, 2002, Defendants filed a Motion to Compel Plaintiff to respond to their First Set of Interrogatories because Plaintiff's initial response had been inadequate. On May 27, 2003, Judge Scott granted Defendants' Motion to Compel and directed Plaintiff to file appropriate interrogatory responses within twenty days. Despite being granted an extension of time in which to respond, Plaintiff failed to file his interrogatory response. As a result, on August 19, 2003, Defendants filed a Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

On November 5, 2003, this Court denied Defendants' Motion to Dismiss after Plaintiff satisfactorily explained the reason he failed to comply with Judge Scott's Order. This Court granted Plaintiff an additional thirty days within which to file his response to Defendants' First Set of Interrogatories. Plaintiff filed and served his response to Defendants' First Set of Interrogatories on November 21, 2003. This response, however, was simply a photocopy of the response Plaintiff initially filed on August 29, 2002, the one Judge Scott found to be inadequate.

Consequently, Defendants filed a second Motion to Dismiss on December 19, 2003. Plaintiff filed a response in opposition. Therein, Plaintiff did not deny that he simply re-filed his initial interrogatory response. Rather, he argued that Judge Scott did not have dispositive jurisdiction, and therefore lacked the proper authority to find his initial interrogatory response inadequate. Further, Plaintiff argued that he did not fail to respond as Defendants alleged because he did indeed file a response.

On May 24, 2004, this Court denied Defendants' Second Motion to Dismiss. In doing so, however, this Court rejected Plaintiff's arguments and excuses for not complying with Judge Scott's Order. Nonetheless, because Plaintiff is proceeding *pro se,* this Court determined that granting the relief Defendants requested would be too drastic a measure at that stage of the litigation. *See Bobal v. Rensselaer Polytecnic Inst.,* 916 F.2d 759, 764 (2d Cir.1990) ( "dismissal with prejudice [under Rule 37] is a harsh remedy to be used only in extreme situations ..."). This Court warned Plaintiff that his lawsuit may be dismissed with prejudice if he did not file and serve appropriate responses to Defendants' First Set of Interrogatories within thirty days. *Cf. id.* at 764 (discussing that a court may dismiss an action brought by a *pro se* plaintiff if such plaintiff has been advised by

the court that further non-compliance with a court order could result in dismissal of the case with prejudice).

**\*2** On June 17, 2004, Plaintiff filed a Motion to Extend the thirty-day response deadline. By Order filed July 7, 2004, this Court directed Defendants to provide Plaintiff with another copy of their First Set of Interrogatories, extended Plaintiff's deadline to respond to August 30, 2004, and warned Plaintiff that this was his final extension of time and that his failure to respond could result in his case being dismissed with prejudice. On August 13, 2004, Plaintiff filed his response to Defendants' First Set of Interrogatories.

On September 2, 2004, Defendants filed their instant Third Motion to Dismiss pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure. By Order filed October 7, 2004, this Court directed Plaintiff to file a response to Defendants' motion on or before October 29, 2004. On October 29, 2004, Plaintiff filed a Motion for Extension of Time to respond. By Order filed November 4, 2004, this Court extended Plaintiff's response deadline to November 29, 2004, and warned Plaintiff that his failure to file a response could lead to Defendants' motion being granted as uncontested. To date, Plaintiff has not filed a response to Defendants' motion.

## III. DISCUSSION

A. Dismissal under Rule 41(b) For Failure to Prosecute
This case first warrants dismissal based on Plaintiff's failure to prosecute, pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that:

> [f]or failure of the plaintiff to prosecute or to comply with these rules or any order of court, a defendant may move for dismissal of an action or of any claim against the defendant. Unless the court in its order for dismissal otherwise specifies, a dismissal under this subdivision and any dismissal not provided for in this rule, other than a dismissal for lack of jurisdiction, for improper venue, or for failure to join a party under Rule 19, operates as an adjudication upon the merits.

FED. R. CIV. P. 41(b).

Rule 41(b) does not define what constitutes failure to prosecute. However, the Second Circuit has stated that failure to prosecute "can evidence itself either in an action lying dormant with no significant activity to move it or in a pattern of dilatory tactics." *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982). Dismissal pursuant to Rule 41(b) falls within the court's discretion. *See id.* at 42-43 ("the scope of review of an order of dismissal is confined solely to whether the trial court has exercised its inherent power to manage its affairs within the permissible range of its discretion"). It is, however, "a harsh remedy to be utilized only in extreme situations." *Harding v. Fed. Reserve Bank,* 707 F.2d 46, 50 (2d Cir.1983) (quoting *Theilmann v. Rutland Hosp., Inc.,* 455 F.2d 853, 855 (2d Cir.1972) (per curiam); *see also Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 665 (2d Cir.1980) (discussing the sanction of dismissal for failure to prosecute as "pungent, rarely used, and conclusive"). This is particularly true in cases involving *pro se* litigants, where dismissal for failure to prosecute should only be granted "when the circumstances are sufficiently extreme." *Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996) (citing *Nita v. Connecticut Dep't of Envtl. Prot.,* 16 F.3d 482, 487 (2d Cir.1994)).

**\*3** The following factors, none of which is dispositive, must be considered in determining whether dismissal for failure to prosecute is warranted: (1) the duration of the plaintiff's failures, (2) whether the plaintiff received notice that further delays would result in dismissal, (3) whether the defendant is likely to be prejudiced by further delay, (4) whether an appropriate balance has been struck between alleviating the court's calendar congestion and protecting the litigants' due process rights, and (5) whether lesser sanctions would be appropriate. *See United States ex rel. Drake v. Norden Sys., Inc.,* 375 F.3d 248, 255 (2d Cir.2004); *Nita,* 16 F.3d at 485; *Feurtado v. City of New York,* 225 F.R.D. 474, 477 (S.D.N.Y.2004) (quoting *Jackson v. City of New York,* 22 F.3d 71, 74 (2d Cir.1994)). In the present case, these factors weigh in favor of dismissal.

1. Duration of Failures
The relevant inquiry on this factor is twofold: (1) whether the plaintiff is at fault for failing to prosecute, and (2) whether the plaintiff's failures were of significant duration. *See Norden Sys.,* 375 F.3d at 255.

In this case, Plaintiff has failed in two ways. First, as noted above, Plaintiff has failed to respond to Defendants' Third Motion to Dismiss, despite twice being directed by this Court to do so. Second, and more significant, Plaintiff has failed to adequately comply with Judge Scott's discovery Order of May 27, 2003. Plaintiff has been afforded numerous opportunities to file an appropriate response to Defendants' First Set of Interrogatories. This Court alone has twice extended Plaintiff the benefit of the doubt by denying two Motions to Dismiss for Plaintiff's failure to engage in discovery. While Plaintiff did, in fact, file a response to Defendants' First Set of Interrogatories on August 13, 2004, his response is wholly inadequate. Plaintiff's response contains multiple objections to Defendants' basic interrogatory requests and does not provide anything by way of meaningful discovery. In fact, no useful information whatsoever is contained in Plaintiff's response. Clearly, Plaintiff alone is responsible for repeatedly filing inadequate responses to Defendants' discovery request. As a result, Defendants still have not received any meaningful response to their interrogatory requests.

With respect to the second inquiry, which concerns the duration of Plaintiff's failures, it has been almost one year that Plaintiff has failed to file a response to Defendants' Third Motion to Dismiss. The delay caused by Plaintiff's failure to response to Defendants' interrogatory request is even more significant. Defendants filed and served their First Set of Interrogatories on August 17, 2001. It has thus been more than *four years* and Plaintiff still has not filed an adequate response. This is a failure of significant duration. *Cf. Chira,* 634 F.2d at 666-67 (delay of six months sufficient to warrant dismissal for failure to prosecute); *Antonios A. Alevizopoulos & Assoc., Inc. v. Comcast Int'l Holdings, Inc.,* No. 99 Civ. 9311, 2000 WL 1677984, at *2 (S.D.N.Y. Nov.8, 2000) (delay of four months warranted dismissal). Thus, this Court finds that this factor weighs in favor of dismissal. In this Court's view, all delay in this case is attributable to Plaintiff and it is of significant duration.

### 2. Notice of Dismissal

**\*4** The Second Circuit requires that the plaintiff receive adequate notice that the case could be dismissed due to inaction. *See Martens v. Thomann,* 273 F.3d 159, 180-81 (2d Cir.2001). In the present case, Plaintiff had adequate notice. First, both the initial Scheduling Order

on Defendants' Third Motion to Dismiss and the Order granting Plaintiff's request for an extension of time warned Plaintiff that his failure to file a response as directed could lead to Defendants' motion being granted as uncontested. Second, this Court's Decision and Order denying Defendants' First Motion to Dismiss explicitly stated that Defendants were free to seek dismissal of Plaintiff's Complaint if he failed to respond to the First Set of Interrogatories as directed. Moreover, this Court's Decision and Order denying Defendants' Second Motion to Dismiss warned Plaintiff that his failure to file appropriate responses to Defendants' First Set of Interrogatories could result in this action being dismissed with prejudice. Because Plaintiff was repeatedly put on notice that his case could be dismissed due to his continued inaction, this factor strongly weighs in favor of dismissal. *See Lyell Theatre,* 682 F.2d at 42-43 (Rule 41(b) dismissal upheld where plaintiff was warned by opposing counsel and the court that dismissal for failure to prosecute was possible).

### 3. Prejudice to Defendants

The third factor requires an inquiry into whether the defendant has been prejudiced by the plaintiff's inaction. "Prejudice to defendants resulting from unreasonable delay may be presumed, but in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionately greater." *Lyell Theatre,* 682 F.2d at 43 (citations omitted). In *Lyell Theatre,* the court presumed prejudice where the plaintiff on numerous occasions failed to file documents as directed by the court. *Id.* at 39-40, 43. Similar to the present case, the plaintiff in *Lyell Theatre* continued to ignore the court's orders even after he had been warned that he was risking dismissal. *Id.* at 39. Under *Lyell Theatre,* the prejudice to Defendants in this case may be presumed. Thus, this factor weighs in favor of dismissal.

### 4. Balance between Calendar Congestion and Due Process Rights

The fourth factor requires the court to consider the balance between calendar congestion and the plaintiff's right to present his or her case. *See Norden Sys.,* 375 F.3d at 257. In this regard, " 'a court must not let its zeal for a tidy calendar overcome its duty to justice.' " *Feurtado,* 225 F.R.D. at 480 (quoting *Davis v. United Fruit Co.,* 402 F.2d 328, 331 (2d Cir.1968)). Plaintiff's failure to comply with Judge Scott's discovery order has resulted in this Court

having to prepare and file numerous scheduling orders, as well as decide three separate motions to dismiss. While this has been a needless expenditure of judicial resources, this Court cannot conclude that the overall effect on docket congestion has been significant.

**\*5** This Court notes, however, that Plaintiff has been afforded Due Process rights in that he has been provided numerous opportunities to comply with the Orders of this Court. Thus, Plaintiff's own failure to litigate this matter is not a denial of Due Process. See *Dodson v. Runyon,* 957 F.Supp. 465, 470 (S.D.N.Y.1997) ("any claim that plaintiff's due process rights were violated thus cannot prevail because the delay and resultant dismissal of plaintiff's case are of his own making"); *cf. Feurtado,* 225 F.R.D. at 480 (repeated failure to comply with court orders diminishes a plaintiff's right to present his claims). Accordingly, this factor also weighs in favor of dismissal.

### 5. Consideration of Lesser Sanctions

Finally, the Second Circuit requires district courts to consider whether lesser sanctions would sufficiently remedy any prejudice resulting from the plaintiff's inaction. See *Norden Sys.,* 375 F.3d at 257. Upon reviewing the entire record in this case, it is the opinion of this Court that Plaintiff has no intention of complying with this Court's Orders or properly litigating this case. Plaintiff has repeatedly ignored court orders by failing to file a response to Defendants' Third Motion to Dismiss and to Defendants' First Set of Interrogatories. Given the procedural history of this case, this Court finds that any sanction short of dismissal would be ineffective. See *Smith v. Human Res. Admin. of New York City,* 2000 WL 307367, at \*3 (S.D.N.Y. Mar.24, 2000) (finding lesser sanctions inappropriate where past court orders did not motivate the plaintiff to move the case forward); *Alevizopoulos,* 2000 WL 1677984, at 4 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders). Thus, this final factor also weighs in favor of dismissal.

Accordingly, this Court finds that dismissal of this case is warranted under Rule 41(b) for Plaintiff's failure to prosecute.

### B. Dismissal under Rule 37(b) For Failure to Comply with Discovery Orders

"A district court may impose sanctions when 'a party ... fails to obey an order to provide or permit discovery.' " *Burns v. Imagine Films Entm't, Inc.,* 164 F.R.D. 594, 598 (W.D.N.Y.1996) (quoting FED. R. CIV. P. 37(b)). Rule 37 of the Federal Rules of Civil Procedure, which concerns the discovery obligations of civil litigants, vests district courts with "broad power" and discretion to impose sanctions, including dismissal, on parties who fail to adhere to discovery orders. See *Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *see also Jones v. J.C. Penney's Dep't Stores, Inc.,* 228 F.R.D. 190, 195 (W.D.N.Y.2005) (identifying dismissal of the action as an available sanction under Rule 37); *JSC Foreign Econ. Ass'n. Technostroyexport v. Int'l Dev. & Trade Servs., Inc.,* No. 03 Civ. 5562, 2005 WL 1958361, at \*9 (S.D.N.Y. Aug. 16, 2005).

**\*6** While Rule 37 dismissal is a drastic remedy to be reserved only for extreme circumstances, it "is warranted ... where a party fails to comply with the court's discovery orders willfully, in bad faith, or through fault." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir.1988) (and cases cited therein); *see also Societe Int'l v. Rogers,* 357 U.S. 197, 212, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (sanctions under Rule 37 justified where responding party has control over information requested and fails or refuses production without showing of inability to comply with court's order). Moreover, "dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal." *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam).

For all of the reasons discussed above, this Court finds that dismissal of this case is also proper under Rule 37(b) for Plaintiff's failure to comply with discovery orders.

### IV. CONCLUSION

Mindful of the fact that *pro se* cases should not easily be dismissed for procedural deficiencies, this Court concludes that Plaintiff's failures in this case go beyond procedural deficiencies, and constitute actual neglect. Plaintiff has failed to diligently prosecute this action in any manner, and has failed to comply with orders of this Court. As such, because each of the factors relevant to the

Rule 41(b) and Rule 37(b) analysis favor dismissal, this Court will dismiss this case with prejudice.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendants' Third Motion to Dismiss (Docket No. 145) is GRANTED.

FURTHER, that this case is dismissed with prejudice pursuant to Rules 41(b) and 37(b) of the Federal Rules of Civil Procedure.

FURTHER, that the Clerk of the Court is directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 2205816

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Yellow Flag - Negative Treatment

Distinguished by Keitt v. Doe, W.D.N.Y., December 5, 2013

2008 WL 1758644

United States District Court,
S.D. New York.

John NOLAN, Plaintiff,

v.

PRIMAGENCY, INC. et al., Defendants.

No. 07 Civ. 134(RJS).
|
April 16, 2008.

**Opinion**

*MEMORANDUM AND ORDER*

RICHARD J. SULLIVAN, District Judge.

**\*1** On January 31, 2008, this Court issued an Order to Show Cause (the "OSC") *sua sponte,* directing counsel for plaintiff John Nolan, Mr. Louis A. Piccone, Esq., and counsel for defendants Primagency, Inc., Steven Lebetkin, and Conrad J. Isoldi ("Defendants"), Mr. Neil R. Flaum, Esq., to show cause why this case should not be dismissed and/or why sanctions and a finding of civil contempt on Mr. Piccone and/or Mr. Flaum should not issue given the failure of plaintiff to diligently prosecute this case, and the failure of the parties to follow Court orders. After counsel for plaintiff failed to appear on the return date of the OSC, the Court issued an order on March 3, 2008 imposing sanctions on the parties, but declining to dismiss the case, provided that the parties complied with the directives contained in that order. *See Nolan v. Primagency, Inc., No. 07 Civ. 134(RJS), 2008 WL 650387 (S .D.N.Y. Mar. 3, 2008)* ("*Nolan I*"). Plaintiff failed to comply with that order in each and every respect. Accordingly, pursuant to Federal Rule of Civil Procedure 41(b), this action is dismissed with prejudice.

**I. BACKGROUND**

The Court presumes the parties' familiarity with the facts relevant to this Order, which are recounted in detail in the OSC, as well as prior orders and transcripts in this matter,

including *Nolan I.* However, certain facts post-date those orders and are recounted here.

The Court in *Nolan I* imposed civil contempt sanctions on Mr. Piccone and Mr. Flaum, in the amounts of $750.00 and $200.00, respectively. *See Nolan I* at \*1-4. *Nolan I* also included the following directives:

> Additionally, Mr. Piccone has until March 17, 2008, to comply with the Court's November 1, 2008 and January 3, 2008 orders. This means that by March 17, 2008, Mr. Piccone must (1) properly file the Amended Complaint via the Court's electronic case system ("ECF"); (2) submit a courtesy copy of the Amended Complaint to chambers in accordance with the Individual Practices of the undersigned; (3) confer with Defendants' counsel, Mr. Flaum, regarding a joint proposed Case Management Plan; (4) submit a proposed Plan to the Court by hand delivery, email, or regular mail, provided that it reaches chambers by March 17, 2008; and (5) submit a joint status letter, along with Mr. Flaum, outlining what, if anything, has transpired in this case since the November 1, 2007 conference. Mr. Piccone is also directed to forward a copy of this order to his client, plaintiff John Nolan and file proof of service electronically with the Court .... **Failure to comply with this Order in any respect shall result in dismissal of this case pursuant to Rule 41(b) of the Federal Rules of Civil Procedure.**

*Nolan I, 2008 WL 650387 at \*3* (emphasis added). With regard to Mr. Flaum, *Nolan I* contained the following directives:

> In addition, Mr. Flaum is given a limited amount of time in which to comply with past orders. This means that Mr. Flaum must (1) properly file an answer to

the Amended Complaint via the
Court's ECF system by April 7,
2008, assuming, of course, that
the Amended Complaint has been
filed as of March 17, 2008; (2)
submit a courtesy copy of the
Answer to chambers in accordance
with the Individual Practices of
the undersigned; (3) confer with
Plaintiff's counsel, Mr. Piccone,
regarding a joint proposed Case
Management Plan; (4) submit a
proposed Plan to the Court by
hand delivery, email, or regular mail,
provided that it reaches chambers
by March 17, 2008; and (5) submit
a joint status letter, along with Mr.
Piccone, no later than March 17,
2008, outlining what, if anything,
has transpired in this case since
the November 1, 2007 conference.
If for some reason a joint letter
is not possible, Mr. Flaum shall
submit a status letter to the Court by
March 17, 2008 explaining why the
submission of a joint letter was not
possible. Additionally, Mr. Flaum
shall be present at the conference
on Tuesday, April 8, 2008 at 10:30
a.m., and is also directed to forward
a copy of this Order to his clients and
file proof of service electronically
with the Court. Failure to strictly
comply with this order shall result in
further sanctions.

**\*2** *Id.* at \*4. The Court in *Nolan I* stated three separate
times that the case would be dismissed if plaintiff failed to
comply with any of these directives. *Id.* at \*1-5.

Incredibly, as of April 8, 2008, as noted in the record on
that day's conference, **the parties collectively had failed to
comply with even one of the directives contained in *Nolan I.***
(*See* Apr. 8 Tr. at 3.) Mr. Piccone admitted on the record
that he had not complied with any of the directives in
*Nolan I,* and that his failure to comply with *Nolan I* was
due to personal issues that the Court does not recount
here but are referenced, at least in part, in the transcript of
the April 8, 2008 telephone conference. [1] (*See id.* at 3-4.)

Mr. Flaum noted that although he had also "missed the
boat" (*id.* at 8), he sent in payment of the $200.00 sanction
on April 7, 2008 and filed the status letter that day (*see
id.*), 21 days after the deadline contained in *Nolan I*. [2] It
is unclear whether Mr. Flaum ever forwarded a copy of
*Nolan I* to his clients as directed, but it is certainly clear
from the docket sheet in this case that Mr. Flaum failed
to file the required proof of service. *See Nolan I,* 2008 WL
650387, at \*4.

[1]     Mr. Piccone asserted on the record at the April 8,
        2008 conference that he had in fact filed the amended
        complaint in November, 2007, and that he could
        submit proof demonstrating this fact. (*See* Transcript
        of April 8, 2008 Conference ("Apr. 8 Tr.") at 5-7.)
        While it may be true that Mr. Piccone did technically
        file a hard copy of the amended complaint in this
        matter, the amended complaint was never *properly*
        filed on ECF, because he never emailed the amended
        complaint to case_openings@nysd . uscourts.gov,
        pursuant to ECF procedure. As a result of his failure
        to do so, the amended complaint is not available
        on ECF. This is exactly what the Court sought to
        ameliorate when it ordered Mr. Piccone to "properly
        file" the amended complaint on ECF. *See Nolan I,*
        2008 WL 650387, at \*3. In any event, regardless of
        the extent of Mr. Piccone's non-compliance with this
        portion of *Nolan I,* this dismissal is based on plaintiff's
        counsel's failure to follow numerous other directives,
        as outlined in this and prior orders.

[2]     A letter from Mr. Flaum addressed to the Court and
        dated April 7, 2008 was received in Chambers on
        April 9, 2008, and contained a check payable to the
        Clerk of the Court in the amount of $200.00. That
        check was tendered to the cashier in the Clerk's office
        on April 9, 2008.

## II. DISCUSSION

### A. Legal Standard for Dismissal Pursuant to Rule 41(b)

Rule 41(b) expressly authorizes involuntarily dismissal
"[i]f the plaintiff fails to prosecute or to comply with
these rules or a court order." Fed.R.Civ.P. 41(b); *see also
LeSane v. Hall's Sec. Analyst, Inc.,* 239 F.3d 206, 209 (2d
Cir.2001). The "primary rationale" for dismissal pursuant
to Rule 41(b) is "the failure of plaintiff in his duty to
process his case diligently." *Lyell Theatre Corp. v. Loews
Corp.,* 682 F.2d 37, 43 (2d Cir.1982). Dismissal pursuant

to Rule 41(b) is committed to the discretion of the district court, and may be imposed *sua sponte*. *See Link v. Wabash Railroad Co.,* 370 U.S. 626, 633 (1962); *LeSane,* 239 F.3d at 209. Rule 41(b) provides that such a dismissal "operates as an adjudication on the merits" unless the dismissal order states otherwise. *See Lyell Theatre,* 682 F.2d at 42-43.

Dismissal is an extreme and "harsh" remedy only to be imposed in the most "extreme" situations, and the Court must consider the entire record in deciding whether dismissal is appropriate. *See Lucas v. Miles,* 84 F.3d 532, 535 (2d Cir.1996); *Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir.1993). However, in appropriate cases, dismissal must be available, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.,* 427 U.S. 639, 643 (1976). While dismissal based on the actions of a party's attorney may have serious consequences for the represented party, the Supreme Court has recognized that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client." *Link,* 370 U.S. at 633.

**\*3** The Second Circuit has instructed that a district court weighing dismissal of a case pursuant to Rule 41(b) should employ a balancing test, considering the following factors:

> (1) the duration of the plaintiff's failure to comply with the court order, (2) whether plaintiff was on notice that failure to comply would result in dismissal, (3) whether the defendants are likely to be prejudiced by further delay in the proceedings, (4) a balancing of the court's interest in managing its docket with the plaintiffs interest in receiving a fair chance to be heard, and (5) whether the judge has adequately considered a sanction less drastic than dismissal.

*Lucas,* 84 F.3d at 535 (2d Cir.1996); *see also United States* ex rel. *Drake v. Norden Sys., Inc.,* 375 F.3d 248, 254 (2d Cir.2004). Generally, no one factor is dispositive. *Shannon v. Gen. Elec. Co.,* 186 F.3d 186, 194 (2d Cir.1999) (citing

*Nita v. Conn. Dep't of Envtl. Prot.,* 16 F.3d 482, 485 (2d Cir.1994)).

## B. Analysis

Weighing all of the above factors, the Court dismisses this case with prejudice pursuant to Rule 41(b).

## 1. Duration

The first element of the balancing test, the duration of plaintiffs failures, requires that the court consider "(1) whether the failures to prosecute were those of the plaintiff; and (2) whether these failures were of significant duration." *Martens v. Thomann,* 273 F.3d 159, 180 (2d Cir.2001) (citing *Spencer v. Doe,* 139 F.3d 107, 113 (2d Cir.1998)); *see also United States* ex rel. *Drake,* 375 F.3d at 255. The court must also consider whether any of the delays are attributable to the defendant. *See Jackson v. City of New York,* 22 F.3d 71, 75 (2d Cir.1994).

Here, while the various failures to follow court orders can be attributed to both parties, plaintiff is primarily to blame for the fact that this case has not advanced in more than six months. *See Nolan I,* 2008 WL 650387, at \*5. This period of delay is particularly significant given that, during that time, the action did not merely lie dormant, but the parties ignored and disobeyed multiple court orders designed to move the case along. The six-month period at issue here thus is of sufficient duration to weigh in favor of dismissal. *See Lyell Theatre Corp.,* 682 F.2d at 42-43 (noting that Rule 41 dismissal may be warranted "after merely a matter of months").

## 2. Notice

The second element to be considered is whether the plaintiff was on notice that further delay would result in dismissal of the case. *See Lucas,* 84 F.3d at 535 (2d Cir.1996). The Second Circuit has held that where a court puts a plaintiff on notice that the court is considering dismissal, and a plaintiff fails to file a document explaining the failures and outlining why the action should not be dismissed, this element has been met. *See Shannon,* 186 F .3d at 194-95.

The remote element strongly weighs in favor of dismissal of this case. Plaintiff was given notice of the Court's intent to dismiss the action in *Nolan I,* which stated *three times* that the action would be dismissed in the event of the plaintiff's failure to comply with its directives. *See Nolan I,* 2008 WL 650387, at *1-5. In addition, the OSC gave both parties an opportunity to submit papers and to appear in Court to contest dismissal. Plaintiff failed to submit papers in response to the OSC, or to appear on the return date, and failed to follow even one of the directives in *Nolan I.* Furthermore, the parties had previously been warned that the Court would consider sanctioning the parties for failure to comply with Court orders. (*See* Jan. 2, 2008 Order.) Finally, plaintiff himself appeared at the January 30, 2008 conference before the Court, and was informed of the Court's intention to issue the OSC and consider dismissing the case absent further action. (*See* Jan. 30, 2008 Tr. at 3-5.) Thus, because it is abundantly clear that the Court gave plaintiff notice of the impending dismissal of the case, the second element weighs in favor of dismissal.

### 3. Prejudice

**\*4** The third element requires that the Court consider the prejudice of further delay to the defendant. *See Lucas,* 84 F.3d at 535 (2d Cir.1996). Where the delay is unreasonable, prejudice may be presumed as a matter of law. *Shannon,* 186 F.3d at 195 (citing *Lyell Theatre,* 682 F.2d at 43). This is generally because "delay by one party increases the likelihood that evidence in support of the other party's position will be lost and that discovery and trial will be made more difficult." *Id.* However, "in cases where delay is more moderate or excusable, the need to show actual prejudice is proportionally greater." *Lyell Theatre,* 682 F.2d at 43. "Although a court cannot deny a plaintiff the right to be heard in the interest of avoiding docket congestion, where a plaintiff could have avoided dismissal 'there can be no denial by plaintiff that [its] due process rights have been denied.' " *Jacobs v. County of Westchester,* No. 99 Civ. 4976(WCC), 2008 WL 199469, at *6 (S.D.N.Y. Jan. 22, 2008) (quoting *Europacific Asset Mgmt. Corp. v. Tradescape Corp.,* 233 F.R.D. 344, 354 (S.D.N.Y.2005) (alteration in original)).

Defendants' counsel is to blame for at least some of the delay in this matter. Because of this, and because only six months have passed, the Court will not presume prejudice.

While it is demonstrably unreasonable to fail to comply with court orders for six months, the unreasonable delay present in other cases in which courts presumed prejudice is absent here. *See Shannon,* 186 F.3d at 195 (finding presumption of prejudice because events at issue in lawsuit had taken place over a decade earlier); *Peart v. City of New York,* 992 F.2d 458, 462 (2d Cir.1993) (citing potential for witness recollection to diminish or witness unavailability as the reason for a presumption of prejudice due to unreasonable delay); *Dodson,* 957 F.Supp. at 470 (S.D.N.Y.1997) (holding that dismissal was appropriate after a five-year delay because the court can presume that witnesses' "memories have faded" when eleven years have passed since the events giving rise to plaintiffs cause of action). Thus, the Court finds that the prejudice factor does not weigh in favor of dismissal.

### 4. Balancing the Court's and Plaintiff's Interests

With respect to the fourth element, the balancing of the court's interests and the plaintiff's right to a fair adjudication on the merits, the Second Circuit has instructed that "[t]here must be compelling evidence of an extreme effect on court congestion before a litigant's right to be heard is subrogated to the convenience of the court." *Lucas,* 84 F.3d at 535-36. As such, the plaintiff's failure to prosecute must be "vexatious and burdensome" on the Court's ability to manage its docket, as opposed to being merely "silent and unobtrusive." *LeSane,* 239 F.3d at 210.

Plaintiff's right to an opportunity to be heard is not taken lightly by this Court. However, this action has been pending for over a year, and there has been no significant progress of any kind for six months. During that time, this Court has issued six separate orders relating to the parties' various failures, and held three conferences relating to the parties' inability to advance the case. While the Court has less knowledge of what transpired prior to this action being reassigned to the undersigned on September 4, 2007, the parties' ongoing failure to comply with orders of this Court has taken up a grossly disproportionate amount of the Court's time since October, 2007. Plaintiff's duty to prosecute the case diligently "is designed to achieve 'fairness to other litigants, whether in the same case or merely in the same court as competitors for scarce judicial resources....' " *Dodson,* 957 F.Supp. at 470 (quoting *Chira v. Lockheed Aircraft Corp.,* 634 F.2d 664, 668 (2d Cir.1980)). As such, the Court finds that plaintiff's failures

have been "vexatious and burdensome" and accordingly, the fourth element weighs in favor of dismissal.

### 5. Efficacy of Lesser Sanctions

**\*5** Finally, the fifth element looks to whether the Court has adequately considered remedies other than dismissal. "It is clear that a district judge should employ the remedy of dismissal 'only when he is sure of the impotence of lesser sanctions.' " *Dodson,* 86 F.3d at 39 (citing *Chira,* 634 F.2d at 665). "In deciding on the suitability of lesser sanctions, and whether the sanctions should be aimed primarily against the party or the attorney, it can be important for the district court to assess the relative roles of attorney and client in causing the delay...." *Id.* at 40. "[T]he more the delay was occasioned by the lawyer's disregard of his obligation toward his client, the more this factor argues in favor of a less drastic sanction imposed directly on the lawyer." *Id.* However, this Court must be guided by the Supreme Court's pronouncement that "[t]here is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent." *Link,* 370 U.S. at 633-34.

Although it is without question that plaintiff's failures in this case are solely attributable to his counsel, Mr. Piccone, plaintiff himself was on notice of Mr. Piccone's shortcomings up to and including his failure to appear on January 30, 2008. Nevertheless, as of the April 8, 2008 telephone conference, Mr. Piccone was still the counsel of record in this matter. Plaintiff voluntarily chose Mr. Piccone to represent him in this action. Thus, while dismissal is an unfortunate result for plaintiff, it is not an unjust result. *See Link,* 370 U.S. at 633-34.

As to the consideration of lesser sanctions, this factor clearly weighs in favor of dismissal. As reflected in the record of this case, the Court has given plaintiff numerous opportunities to be heard in relation to his failure to follow court orders. Prior admonishments and warnings have been wholly ineffective. Indeed, the Court previously issued a civil contempt sanction against Mr. Piccone in the amount of $750.00 in order to induce his compliance with future orders. *See Nolan I,* 2008 WL 650387 at *3. As of

the date of this Order, that sanction has not been paid. Moreover, as noted above, counsel has not complied with *any* of the directives contained in *Nolan I.* As such, and based on the record in this case, the Court is convinced that lesser sanctions will have no impact on plaintiff's, or his counsel's, conduct or compliance with this court's orders.

As four of the five elements favor dismissal under Rule 41(b), the Court finds that dismissal is appropriate, and this case is accordingly dismissed with prejudice pursuant to Rule 41(b). While the Court is sympathetic to the personal issues encountered by plaintiffs counsel over the past few months, as alluded to by Mr. Piccone during the April 8, 2008 telephone conference, that fact does not alleviate Mr. Piccone's duties to the Court and his client. A simple letter to the Court explaining his plight could have resulted in the extension of deadlines, a short stay of the action, or other relief, including obtaining new counsel for plaintiff. Mr. Piccone has made no showing that he was unable to contact the Court during the time that he was preoccupied with personal matters. The Court recognizes that dismissal of this case with prejudice may have the result of denying plaintiff any relief that he might have obtained on his claims. However, plaintiff is responsible for his choice of counsel, and did not choose at any point, even after being advised of Mr. Piccone's failures, to replace him as counsel. *See Lastra v. Weil, Gotshal & Manges LLP,* No. 03 Civ. 8756(RJH)(RLE), 2005 WL 551996, at *4 (S.D.N.Y. Mar. 8, 2005) ("Claims by a litigant that he should be excused from his attorney's actions because of alleged fraudulent conduct and disobeyance of the litigant's orders may give rise to a claim for malpractice, but does not constitute an extraordinary circumstance or excusable neglect.")

### III. CONCLUSION

**\*6** For the foregoing reasons, this action is DISMISSED with prejudice pursuant to Rule 41(b). The Clerk of the Court is respectfully directed to close this case.

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2008 WL 1758644, 70 Fed.R.Serv.3d 397

**Nolan v. Primagency, Inc., Not Reported in F.Supp.2d (2008)**

2008 WL 1758644, 70 Fed.R.Serv.3d 397

---

**End of Document**

© 2018 Thomson Reuters. No claim to original U.S. Government Works.